Filed 5/19/16  Hydraulics International v. Superior Court CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HYDRAULICS INTERNATIONAL, INC., | B268073 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC518522) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| FERNANDO VEGA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate.  Kenneth R. Freeman, Judge.  Petition granted.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Jeffrey P. Fuchsman and Rami Yomtov for Petitioner.

No appearance by Respondent.

Ehlert Appeals, Allison L. Ehlert; Boren Osher & Luftman, Paul K. Haines; Baltodano & Baltodano and Hernaldo J. Baltodano for Real Party in Interest.

_____

On the record before us, we hold that substantial evidence does not support certifying an unpaid wages class. Further, we reverse the trial court's finding that common questions of fact predominate: Apart from isolated anecdotal accounts, the employee-declarants have provided no evidence of a company-wide policy allowing pre-shift work and no evidence that any supervisors knew that the employees were working before their shifts. (See *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*).) In fact, the evidence presented in the trial court is to the contrary: the employee handbooks, which advise employees that employer pays only for pre-approved overtime, and the new-employee orientation that reiterates the overtime rule, demonstrate that the employer neither encourages nor condones individual decisions to start work before the scheduled shift time; the record establishes that none of the hourly employees sought either permission to work overtime or to be paid for overtime.

Accordingly, we order that respondent court reverse its order certifying the class and enter and new and different order, denying certification.

## BACKGROUND

Hydraulics International, Inc. (Hydraulics) employs both hourly (nonexempt) and salaried (exempt) workers. On August 16, 2013, hourly-worker Fernando Vega sued Hydraulics, alleging failure to pay overtime wages to nonexempt employees.[1] (Lab. Code, §§ 204, 510, 558, 1194, 1198) Nearly two years later,[2] Vega moved to certify an

---

[1] Vega's other causes of action are not at issue in the case at bar. In the original complaint, Vega set forth causes of action for failure to comply with minimum wage requirements (Lab. Code, §§ 1182.12, 1194, 1194.2, 1197), failure to provide meal periods (Lab. Code, § 204, 211, 226.7, 512), failure to provide accurate and complete wage statements (Lab. Code, § 226), and failure to pay last wages within 72 hours (Lab. Code, §§ 201, 202, 203). He alleges that these violations of the Labor Code constitute unfair business practices (Bus. & Prof. Code, § 17200 et seq.) and support an award of attorney fees. (Lab. Code, § 2698 et seq.) Vega dismissed with prejudice the causes of action for meal period violations and wage statement violations, and also dismissed with prejudice his demand for civil penalties and attorney fees and costs.

[2] Vega originally set his motion to be heard on July 30, 2015; it was actually heard on August 6, 2015.

Unpaid Wages Class[3] of "Hydraulics' current and former non-exempt employees in California whose timekeeping records reflect that they clocked in for work prior to the scheduled start of their shift on at least one occasion, from August 16, 2009 through the present."

In support of his motion, Vega provided the employee handbooks in use during the subject employment period. Each requires overtime to be approved in writing. The "Working Together at Hydraulics International, Inc. Employee Handbook" expressly states "[a]ny unauthorized overtime will not be paid" and sets forth in bold font that overtime must be approved by a supervisor in writing. Two other handbooks, HR003 Rev A and HB003 Rev B, also in use during the subject employment period, require that a supervisor approve overtime not only in writing but also in advance. Both place this information is a section entitled, "Overtime": "Please remember that you are not allowed to work overtime unless it has been authorized in advance in writing, by your supervisor. Employees working unauthorized overtime may be subject to disciplinary action, up to and including termination."

Juanita Porras, Hydraulics' "person most knowledgeable," testified at her deposition that since May 2010, Hydraulics has used ADP's biometric work "clock-in" system, which requires employees "to put their hand inside the machine" to clock in and out. Before the adoption of this system, the employees swiped time cards to track when their workdays began and ended. Porras testified that company policy forbids employees from clocking in more than 10 minutes before their scheduled shifts, but no one has actually been disciplined for doing so.[4] She further testified that the current policy is to

---

[3] Vega had also sought to certify a waiting time penalty class, employees whose last wages were not paid within 72 hours. In petition No. B268083, Vega seeks review of respondent court's denial of certification. In a separate order, we deny that petition summarily.

[4] Both HR-003 Rev A and Rev B provide: "It is against company policy to clock-in prior to 10 minutes before your shift starts. You should clock out immediately from your shift end. Repeated violation of this policy will result in disciplinary action."

3

deny payment for any clocked-in time before the start of the employee's shift. Porras subsequently changed her deposition testimony to say, "'Employees are always paid for overtime work even if it was not authorized.'"[5]

David Maqui, another "person most knowledgeable," testified at his deposition that Hydraulics uses the Made 2 Manage (M2M) system, a bar-code tracking system that ascertains and monitors the particular job order on which an employee works.

Vega also proffered the expert report of J. Michael Dumond, Ph.D., an economist, who analyzed three data sources provided by Hydraulics for the period from May 10, 2010 through November 7, 2014. He reported that "for nearly 78% of the shifts analyzed (i.e., 6,197 of the 7,961 shifts), the employee . . . clocked in 10.20 minutes earlier, on average, than the scheduled starting time." As for the M2M data, over 50 percent of the shifts started before the scheduled start time, with the employees starting, on average, about eight minutes before the shift.

Vega also provided the declarations of eleven former Hydraulics employees.[6] The declarants stated that they regularly clocked in before their scheduled work time; although they believed that their supervisors observed that they had clocked in early, the supervisors never told them to refrain from working. However, no declarant stated that she or he sought permission to work overtime or asked to be paid for overtime.

In opposition to the class certification motion, Hydraulics submitted multiple declarations wherein employees averred that they had never started work before their shifts began, nor had they seen various Vega declarants start working before their shifts.

Human Resources Director Heidi Marusa explained the clock-in procedure as well as the overtime process in her declaration. She also provided facts that countered statements made by the Vega declarants: "Employees who arrive early before their shift starts are permitted to clock into the timekeeping system up to 10 minutes before the start

---

[5] Vega does not challenge the grace period.

[6] All of the non-English declarations were translated into English. The parties do not dispute the accuracy of the translations.

of their shift for their own convenience. HII has employee break rooms in each building. Employees are free to wait in the employee break room where they can have coffee, eat breakfast, read the newspaper, or visit with co-workers before their shift begins. Employees are prohibited from performing work before their shift starts. The start of shifts are announced by a bell system. [¶] . . . Employees were never instructed or encouraged to clock in early before their shift was scheduled to start. No employees were ever disciplined for not clocking in early. . . . [¶] Under our 7-minute rounding rule, employees will be paid from their scheduled start time if the[y] punch in up to seven minutes after their scheduled work time. If employees are asked to come in early due to production needs, a manual adjustment is made so they will be paid for all of their work hours. Otherwise, because employees are not permitted to, and do not begin work before their scheduled start time, early punches are disregarded. [¶] . . . [¶] [A] notice that is posted by the M2M bar code readers . . . states: 'Please do **not** clock-in to M2M before your shift begins or after your shift ends.'" [7]

Human Resources Generalist Angie Grimaldo stated in her declaration that she instructs all new employees that no employee is permitted to work before his or her shift begins: "I make it clear to the employee that HII prohibits them from starting work before their shift begins, or during their meal and rest breaks."

Mechanical Assembly Supervisor Manuel Ismael Gutierrez refuted several Vega-proffered declarations: "I am employed by HII as a Supervisor in the Mechanical Assembly Department. Employees in this department are normally scheduled to start work at 7:00 a.m. when the bell rings. I have never observed any employees working prior to their shift starting. I would not allow any of my employees to start work before the shift started."

Hydraulics submitted the declaration of its expert, Deborah K. Foster, Ph.D., an economist, stating that Vega and the other employees who submitted declarations in

_____

[7] "HII" refers to Hydraulics.

5

support of certification were paid the correct amount for the time worked, because Hydraulics' policy is to round work time to the nearest quarter hour.

Respondent court granted certification as to the unpaid wages class. This petition followed. We issued an alternative writ, accepted briefing, and heard oral argument.

## DISCUSSION

Generally, we defer to a trial court's certification of a class, except where substantial evidence does not support the trial court's determination that common issues predominate.[8] In the case at bar, Vega provided no evidence of a company-wide policy encouraging pre-shift work and any evidence, apart from anecdotal accounts, that any supervisors knew that the employees were working before their shifts. The electronic clock-in system shows when the workers clock in, but not when they actually commence their job-related tasks. Moreover, the employee handbooks, which advise employees that Hydraulics pays only for pre-approved overtime and the new-employee orientation that reiterates this policy, support a conclusion that Hydraulics neither encourages nor condones individual decisions to start work before the scheduled shift time.

An employer is responsible to pay wages for off-the-clock work; "'the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.'" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 582.) In *Morillion*, the California Supreme Court held that the time agricultural workers spent traveling on their employer's buses to and from the fields was compensable as "hours worked." (*Id*. at p. 595.)

The facts in *Brinker*, *supra*, 53 Cal.4th 1004 are remarkably similar to the facts in the case at bar. Nonexempt hourly workers sued the Brinker employers, alleging that the employees worked off the clock during meal periods.[9] In support of certification, the

---

[8] "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Code Civ. Proc., § 382.)

[9] Plaintiffs also alleged that Brinker failed to provide rest and meal breaks or premium wages in lieu of such breaks. (*Brinker*, *supra*, 53 Cal.4th at p. 1019.)

plaintiff provided "numerous declarations from proposed class members." (*Id.* at p. 1020.) Brinker countered that the off-the-clock subclass should not be certified because "Brinker did not suffer or permit off-the-clock work, and any such off-the-clock work would require individualized employee-by-employee proof. Brinker submitted hundreds of declarations in support of its opposition to class certification." (*Ibid.*)

The trial court certified the off-the-clock class, but the appellate court reversed. The Supreme Court agreed with the appellate court's reversal of certification of the off-the-clock class, because the plaintiff did not present a common policy or a common method of refusal to pay for overtime work; to the contrary, the "only formal Brinker off-the-clock policy submitted disavows such work, consistent with state law. Nor has [plaintiff] presented substantial evidence of a systematic company policy to pressure or require employees to work off-the-clock . . . ." (*Brinker*, *supra*, 53 Cal.4th at p. 1051, fn. omitted.) The Supreme Court went on to explain that there is a presumption that clocked-out employees are not working and that the plaintiffs have to rebut that presumption. The employees failed to do so. They simply provided "anecdotal evidence of a handful of individual instances in which employees worked off-the-clock, with or without knowledge or awareness by Brinker supervisors." (*Id.* at pp. 1051–1052.) The Supreme Court held that the record was insufficient, because the plaintiffs failed to provide substantial evidence of a uniform, companywide policy, thus requiring proof of off-the-clock liability "in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether Brinker knew or should have known of their work." (*Id.* at p. 1052.)

Vega's reliance on *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, is unavailing. In that case, our colleagues in Division Three upheld the class certification where the employer, Farmers Insurance Exchange, expressly, in writing, required employees to perform work tasks at home. (*Id.* at p. 990.) In contrast, the former Hydraulics workers present no evidence of a system-wide management protocol that forced them to work off the clock; instead, the workers state in their declarations that they

7

chose to clock in early and that no one stopped them.  In the case at bar, there has been no showing of any policy—let alone a written policy—mandating (or even encouraging) workers to clock in ahead of their scheduled work times.  This distinction renders *Jones*, where Farmers Insurance had a written policy requiring employees to work off the clock, inapposite to the case at bar.

*Williams v. Superior Court* (2013) 221 Cal.App.4th 1353 (*Williams*) also lends no support to Vega's position.  Therein, Division Eight of this court ordered the trial court to recertify the class of auto field adjusters after Allstate Insurance Company had been forced to reclassify them as hourly workers, rather than as salaried employees exempt from overtime.  (*Id*. at p. 1356.)  Allstate's policy was that the work day started when the adjuster had the first appointment of the day, and Allstate refused to pay for any time spent preparing for that first appointment, including the adjusters' checking on the day's assignments on their work computers and making courtesy calls to auto repair shops and car owners to confirm appointments.  (*Id.* at pp. 1357–1358.)  Employees stated in their declarations that they "hesitated to request overtime because they did not want to be perceived as 'bad' employees."  (*Id.* at p. 1358.)  The employees presented evidence that Allstate had a companywide practice of adjusters' working off-the-clock.  (*Id.* at p. 1370.)

The most significant difference between *Williams*, *supra*, 221 Cal.App.4th 1353, and the case at bar is that, unlike the Allstate employees in *Williams*, Hydraulics did not require its employees to perform tasks on their own time.  Hydraulics formally prohibits overtime work without prior permission and reiterates this policy in its new-employee orientation.  Like Allstate in *Williams*, Hydraulics has an electronic check-in system.  However, the knowledge as to when the hourly workers clock in is not equivalent to awareness that the clocked-in employees are working  before their shift begins.  As *Brinker*, *supra*, 53 Cal.4th 1004 instructs, where a formal policy prohibits working before a shift begins and where new-employee orientation explicitly prohibit pre-shift work, employee anecdotes do not provide substantial evidence that the employer knew they

8

were working.  (*Id.* at pp. 1051–1052.)  Moreover, in contrast to the Allstate employees in *Williams* who stated in their declarations that they "hesitated" to ask for overtime, no Vega declarant states that she or he ever asked to be approved for overtime when they clocked in ahead of his or her scheduled shift.

## DISPOSITION

The petition is granted.  The alternative writ is discharged.  Let a peremptory writ of mandate issue, directing the superior court to vacate the September 11, 2015 order granting the motion for class certification of an "Unpaid Wages Class," in Los Angeles Superior Court case No. BC51822, entitled *Fernando Vega v. Hydraulics International, Inc.*, and thereafter make a new and different order denying same.  The parties shall bear their own costs related to this petition.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.