Filed 12/11/25

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| STEPHEN DIEVES, | C099631 |
| Plaintiff and Appellant, | (Super. Ct. No. CVCS190001082) |
| v. | |
| BUTTE SAND TRUCKING COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sutter County, Perry Parker, Judge.  Affirmed in part and reversed in part.

Aiman-Smith & Marcy and Joseph Clapp for Plaintiff and Appellant.

Seyfarth Shaw, Ryan McCoy, Andrew M. McNaught and Sean T. Strauss for Defendants and Respondents.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of section I of the Discussion.

1

Plaintiff Stephen Dieves worked for defendants Butte Sand Trucking Company, Butte Sand and Gravel, and Bailey Heavy Equipment Hauling, Inc. (collectively, Butte Sand) as a truck driver for approximately nine months between January and October 2018. Dieves sued Butte Sand for failure to provide meal and rest breaks, failure to reimburse for expenses, and violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.).[1] Dieves also brought a representative claim for penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[2]

Dieves appeals from the trial court's denial of his motion for class certification of the meal break, rest break, expense reimbursement, and unfair competition claims. Dieves also appeals the trial court's order granting Butte Sand's motion to strike the PAGA claim. We affirm in part and reverse in part.

In the unpublished portion of this opinion, we affirm the trial court's denial of Dieves' motion for class certification of the rest break and expense reimbursement claims but reverse the denial of Dieves' motion for class certification of the meal break claim and derivative unfair competition claim because the trial court failed to apply the burden-shifting framework in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58 (*Donohue*). We remand for further proceedings as directed herein.

In the published portion of this opinion, we reverse the trial court's order granting Butte Sand's motion to strike the PAGA claim and remand for further proceedings as directed herein because we find the Federal Motor Carrier Safety Administration's (Administration) December 28, 2018 decision (California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed.Reg. 67470-67480 (Dec. 28, 2018)

---

[1] The trial court granted summary adjudication in favor of Butte Sand as to other claims and that ruling is not challenged in this appeal.

[2] Undesignated statutory references are to the Labor Code.

(Preemption Decision)) applies to bar the meal and rest break (MRB) claims under California law regardless of when the conduct occurred. (*Valiente v. Swift Transp. Co. of Ariz., LLC* (9th Cir. 2022) 54 F.4th 581, 584 (*Valiente*).)

DISCUSSION[3]

I

*Denial of Class Certification*

A.    *Legal Background and Standard of Review*

Code of Civil Procedure section 382 authorizes a class action "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." As explained by our Supreme Court, "[t]he party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) California courts consider "pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other indicators of a defendant's centralized practices in order to evaluate whether common behavior towards similarly situated plaintiffs makes class certification appropriate." (*Id.* at p. 333.)

We review the denial of a motion for class certification for abuse of discretion (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435) and, in an exception to the customary appellate rule that we review the trial court's result and not its rationale, we

---

[3] Given that Dieves' appeal is from two distinct orders, we dispense with a general background section and include the pertinent factual background as to each order in the applicable part of the Discussion.

"review only the reasons the court stated for its order, and we reverse if those reasons do not support the order" (*Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1361). If the trial court bases its denial of class certification on erroneous legal assumptions or improper or incorrect legal criteria, we must reverse and remand, "unless the trial court independently relied on at least one other legally valid and factually supported ground" (*Ramirez v. Balboa Thrift & Loan* (2013) 215 Cal.App.4th 765, 777) or we find no prejudice arising from the error (*Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 724 (*Estrada I*); Cal. Const., art. VI, § 13; Code Civ. Proc., § 475).

Further, where, as here, the appellant argues the trial court erred in finding the plaintiff failed to produce substantial evidence to meet the community of interest requirement, we will not reverse the trial court's decision unless " ' "the evidence compels a finding in favor of the appellant as a matter of law." ' " (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566.) " ' "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Ibid*.) The standard of review applied in this context is stringent because the appellant had the burden of proof in the trial court proceeding and the court (or trier of fact) concluded the appellant did not carry that burden. (*Ibid*.) Practically, the stringent standard of review means that, " '[w]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor.' " (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.)

B.    *Denial of Class Certification as to the Meal Break and Rest Break Claims*

"California law provides every nonexempt employee in the transportation industry must be provided with a 30-minute meal period for every five hours worked and a 10-minute rest period for every four hours worked. [Citations.] 'If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law,

including, but not limited to, an applicable statute or applicable regulation, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.' " (*Espinoza v. Hepta Run, Inc.* (2022) 74 Cal.App.5th 44, 54, fn. omitted.)

"In the wage and hour context, a class may establish commonality by showing a uniform policy or practice that causes members to miss or take late meal breaks." (*Estrada I*, *supra*, 76 Cal.App.5th at p. 721.) Dieves' theory of liability is that, although Butte Sand's employee handbook facially complies with California law and Butte Sand uses an in-truck communications system to automatically notify drivers when to take meal and rest breaks, Butte Sand in practice "promotes and maintains a culture that discourages any and all breaks." Dieves argues the trial court erred in finding he failed to produce substantial evidence supporting the existence and predominance of that common issue—i.e., whether Butte Sand discouraged breaks. We agree as to Dieves' meal break claim but disagree as to his rest break claim.

          1.      *Factual Background*

Dieves relied on five pieces of evidence in support of his motion for class certification of the meal break and rest break claims: his own declaration, a transcript of a Butte Sand supervisor's deposition, time records produced by Butte Sand, the declaration of his expert witness who analyzed Butte Sand's time records, and the declaration of Butte Sand's office manager.

In his declaration, Dieves wrote that he was told to sign an "Agreement for On-Duty Meal Period" (Agreement) when he joined Butte Sand, even though he protested that Butte Sand was required to provide off-duty meal periods.[4] The safety director told

---

[4] An employer satisfies its meal break obligation "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from

Dieves "every driver signs the Agreement" and he "would have to do what every other driver did—'Eat at 55 miles per hour' " because no one takes a meal break. Dieves further declared that the person who trained him said "drivers did not take meal periods, because that was not 'the Butte Sand[']s way,' unless they crossed state lines." Dieves argued this culture was confirmed by his own observations and the deposition testimony of a Butte Sand supervisor, who said he did not do anything to relieve drivers of their duty for meal breaks.

Dieves declared he observed drivers "form sort of a conga line" when loading trucks and delivering construction materials and he observed that "the trucks generally retained the same order in the conga line throughout the day, with none stopping for meal or rest periods." Dieves never observed a single driver take a meal or rest break and he was never relieved of his duty for a meal or rest break.

Dieves further argued that the culture of discouraging breaks was confirmed by the time records produced by Butte Sand for approximately 2 percent of the shifts worked by its drivers between May 14, 2015, and November 19, 2021. Butte Sand produced time records for 50 randomly selected workdays during that period, which equated to over 1,300 records of work shifts greater than five hours in duration. The time records showed no recorded entries for meal breaks. Dieves submitted a declaration by his expert witness who analyzed the time records, discussed his statistical methodology, and then projected that 99.78 percent to 100 percent of shifts lasting five or more hours during the proposed class period would not have a recorded meal break. He also submitted a declaration by Butte Sand's office manager, in which she confirmed that she found no records showing

---

doing so." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040.) If the nature of the work prevents an employee from being relieved of all duty, the meal break is considered "on-duty" and counted as time worked. (*Id*. at p. 1035.) An "on-duty" meal break is permitted only if there is a written, revocable agreement between the employer and employee agreeing to on-duty meal periods. (*Ibid*.)

6

a meal period premium was paid to any of the drivers who worked the shifts on the days identified in the time records.

Butte Sand opposed the motion and introduced several pieces of evidence in support of its opposition, including 14 declarations by truck drivers who worked for or had worked for Butte Sand. The declarations formed a material part of the trial court's ruling and are discussed in the context of that ruling *post*.

The trial court denied the motion for class certification as to the meal break and rest break claims. The trial court noted that Dieves relied primarily on Butte Sand's time records as the basis for certifying the class. The trial court found the time records did "not establish a uniform practice of discouraging meal breaks, or constitute substantial evidence of such practice, especially when the fourteen declarations of truck driver employees" produced by Butte Sand were considered. The trial court explained the time records "only demonstrate drivers included in the [2 percent] sample were not clocking out for meal breaks but provide[d] no evidence of the reason for this, for example, if the nature of the driver's work prevented them from being relieved of all duty for a meal break, or if drivers did in fact take meal breaks and didn't record them, or if drivers voluntarily worked through a meal break as a matter of individual preference."

The trial court noted the 14 truck drivers who submitted declarations in support of Butte Sand's opposition declared that they were never pressured, discouraged, or instructed not to take breaks. They further acknowledged that Butte Sand maintained a policy providing off-duty meal and rest breaks, which was explained to them when they were hired. The truck drivers also received daily reminders through an in-truck communications system to take their meal and rest breaks. The drivers explained that they took meal and rest breaks when and if they wanted to take them, and the manner and timing of their breaks differed from day to day depending on several factors. The trial court noted that most of the drivers preferred to skip an unpaid meal break in order to finish their shifts earlier and get home.

7

The trial court pointed out that Dieves took the depositions of 11 of the 14 drivers who submitted declarations in support of Butte Sand's opposition "but did not present any of their testimony in support of the motion, or present declarations by any of the more than 200 drivers who worked for [Butte Sand] during the time period relevant to the proposed class." The trial court found that Dieves failed to produce substantial evidence to show he shares a community of interest with any other truck driver employed by Butte Sand or that "common issues of law or fact predominate over individual issues." The trial court thus denied class certification of the meal and rest break claims.

> 2. *Denial of Class Certification as to the Meal Break Claim Is Reversed*

Dieves argues the trial court erred in finding he failed to produce substantial evidence supporting the existence of the common issue of whether Butte Sand discouraged meal breaks. Specifically, Dieves argues the trial court should have applied the burden-shifting framework in *Donohue*, *supra*, 11 Cal.5th 58 because the time records raised a presumption of meal break violations. We agree.

In *Donohue*, our Supreme Court held that "[i]f time records show missed, short, or delayed meal periods with no indication" that premium pay was provided, a rebuttable presumption arises that the employees were not provided a compliant meal period. (*Donohue*, *supra*, 11 Cal.5th at p. 77; see *id.* at p. 74.) "The presumption derives from an employer's duty to maintain accurate records of meal periods." (*Id.* at p. 76.) "Employers can rebut the presumption by presenting evidence that employees . . . had in fact been provided compliant meal periods during which they chose to work. 'Representative testimony, surveys, and statistical analysis,' along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.' " (*Id.* at p. 77.)

*Estrada I* applied the *Donohue* presumption in the context of class certification, where the plaintiffs' theory of liability centered around "an informal policy requiring

8

employees to finish their work or be relieved by another employee prior to taking meal breaks." (*Estrada I*, *supra*, 76 Cal.App.5th at p. 722.)  The plaintiffs supported "their theory with evidence of violation rates derived from timekeeping records." (*Ibid*.)  The trial court decertified the meal break subclass based on a finding that the claims "involved too many individualized issues, i.e., the claims lacked predominant common questions." (*Id*. at p. 720.)  "Central to the [trial] court's analysis was its belief that employee choice was a significant factor with respect to late and missed meal breaks." (*Ibid*.)  The appellate court reversed, concluding the trial court failed to apply *Donohue*'s burden-shifting framework.  (*Id.* at pp. 722-724.)

The *Estrada I* court wrote that the plaintiffs "met their burden by presenting the time record evidence" (*Estrada I*, *supra*, 76 Cal.App.5th at p. 723) and, based on that evidence, the trial court should have presumed the employer's liability for meal break violations, meaning the plaintiffs "no longer had the burden of proving a theory of class liability" because class liability was presumed (*id.* at p. 725).  The employer then had the burden "to show individual issues predominated" because the burden shifted to the employer "to show that [the] plaintiffs were provided with compliant meal periods but chose to work instead." (*Id*. at pp. 723-724.)  Because the trial court's decertification order relied on erroneous legal assumptions, it was subject to reversal.  (*Id.* at p. 724.)  After finding the error was prejudicial because the appellate court was not reasonably certain that, in applying the *Donohue* presumption framework, the trial court would still have reached the same result, the appellate court reversed the decertification decision. (*Id.* at pp. 723-727.)

This case is like *Estrada I*.  Because Dieves produced time records indicating missed meal breaks and Butte Sand's office manager declared she found no records showing a meal period premium was paid to any of the drivers who worked the shifts identified in those time records, a rebuttable presumption arose that Butte Sand did not provide compliant meal breaks to those drivers.  The burden then shifted to Butte Sand

9

"to show that individual issues predominated." (*Estrada I*, *supra*, 76 Cal.App.5th at pp. 723-724.) The trial court did not apply the presumption or burden shifting here and thus its denial of class certification of the meal break claim is subject to reversal. (*Id.* at p. 724.)

We next consider whether the error was prejudicial. (See *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736 ["misallocation of the burden of proof is not 'reversible error *per se*' "].) An error is prejudicial and results in a miscarriage of justice if the reviewing court concludes, based on its review of the entire record, that it is reasonably probable that the trial court would have reached a result more favorable to the appellant absent the error. (*Cassim v. Allstate Ins. Co*. (2004) 33 Cal.4th 780, 800.) Butte Sand argues it produced sufficient evidence to rebut the presumption and establish that individual issues predominate, pointing to the 14 truck drivers' declarations and deposition testimony of several truck drivers. We agree the trial court's discussion of the truck drivers' declarations indicates the evidence was a material factor in the trial court's finding that the time records did not establish a uniform practice of discouraging breaks or constitute substantial evidence of such practice. But once the *Donohue* presumption arose, Dieves no longer had the burden of proving a theory of class liability because class liability was presumed. (*Estrada I*, *supra*, 76 Cal.App.5th at p. 725.) The burden shifted to Butte Sand to show a significant number of employees took breaks but forgot to record them or voluntarily chose to skip their meal breaks, thereby "creating individualized issues of liability." (*Id.* at p. 726.)

We are not reasonably certain the trial court would have reached the same result if it had shifted the burden and considered the declarations and deposition testimony within the burden-shifting framework. It is unclear whether the trial court would have found that Butte Sand met its burden of showing the existence of individualized issues of liability based on the number of declarations and deposition transcripts submitted when

10

considering the presumed liability was established by over 1,300 records. We accordingly find that the error was prejudicial and reverse the denial of class certification.

Butte Sand's arguments against the application of the *Donohue* presumption are not persuasive. First, whether there are "differing factual circumstances" between *Donohue* and this case is of no moment. Our Supreme Court did not limit the *Donohue* presumption to cases in which there is an allegation or evidence of rounding of meal break time records, as Butte Sand appears to suggest. It held that, "[i]f time records show missed, short, or delayed meal periods with no indication" that premium pay was provided, a rebuttable presumption arises that the employee was not provided a compliant meal period. (*Donohue*, *supra*, 11 Cal.5th at p. 77.) That rule applies equally here because the time records do not reflect recorded meal breaks and no premium pay was provided.

Second, we reject Butte Sand's argument that the time records did not constitute sufficient evidence for application of the *Donohue* presumption because Dieves did not show how 2 percent of the time records between May 14, 2015, and November 19, 2021 "can be representative" of time records for all shifts in the proposed class period from May 14, 2015 to December 27, 2018. As Dieves points out in his reply brief, his expert declared that he looked at the time records, used inferential statistical analysis, and projected that 99.78 percent to 100 percent of the shifts lasting five or more hours during the proposed class period would not have a recorded meal break. Butte Sand does not acknowledge this testimony by Dieves' expert, which explains *how* the time records were used as a representative of the time records for the proposed class period.[5]

For the above reasons, we reverse the trial court's denial of class certification as to the meal break claim and the derivative unfair competition claim. On remand, the trial

---

[5] Butte Sand did not file any evidentiary objections to Dieves' expert's declaration.

11

court is directed to reconsider its ruling and to apply the burden-shifting framework under *Donohue*, unless the trial court denies class certification on another basis.

### 3. *Denial of Class Certification as to the Rest Break Claim Is Affirmed*

Dieves challenges the trial court's denial of class certification of his rest break claim on the same grounds as the denial of his meal break claim. Butte Sand argues the trial court's denial of class certification as to the meal and rest break claims must be analyzed separately because "no court has ever held the *Donohue* presumption applies to rest break claims" and the time records are not relevant to such claims. Butte Sand asserts the only evidence introduced by Dieves in support of class certification of the rest break claim was his own declaration, which was insufficient to demonstrate a community of interest.

Dieves argues his declaration regarding his personal observations that no one took rest breaks coupled with the time records showing that drivers did not record meal breaks constituted substantial evidence supporting class certification of the rest break claim. Without citing any authority or providing any reasoned argument, Dieves summarily asserts that if a jury were to find that Butte Sand discouraged drivers from taking meal breaks, "it could then reasonably infer that [Butte Sand] discouraged rest breaks, too." But, as Butte Sand points out, and Dieves does not dispute, the *Donohue* presumption "derives from an employer's duty to maintain accurate records of meal periods." (*Donohue*, *supra*, 11 Cal.5th at p. 76.) Employers are required "to give employees a mechanism for recording their meal periods and to ensure that employees use the mechanism properly." (*Id.* at p. 77.) Employers are not, however, required to record or keep accurate records of rest breaks. (*Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1149; Cal. Code Regs., tit. 8, § 11090, subd. 7(A)(3).)

Given the underlying rationale of the *Donohue* presumption—i.e., not to reward employers for a failure to keep adequate and required meal break records—and that employers do not have an obligation to record rest breaks, we conclude no presumption

12

arose from the time records as to the rest break claim. Dieves' conclusory statement that a jury could infer rest break violations from time records indicating meal break record violations is disregarded. (*In re A.C.* (2017) 13 Cal.App.5th 661, 672 ["opinion or argument of appellant's counsel without 'citation to any recognized legal authority' " may be deemed forfeited and disregarded].)

The only evidence proffered in support of class certification of the rest break claim was Dieves' declaration that he never saw anyone take or be relieved of duty for a rest break and he was never relieved of duty for a rest break. This evidence does not compel a finding in Dieves' favor as a matter of law that he proved the existence and predominance of a common issue as to the rest break claim. (*In re Marriage of Diamond*, *supra*, 106 Cal.App.5th at p. 566.) We thus affirm the denial of the motion for class certification as to the rest break claim and do not address Dieves' argument of error as to the trial court's ruling on typicality.

C.    *Denial of Class Certification as to the Expense Reimbursement Claim Is Affirmed*

Dieves sought class certification of his expense reimbursement claim under section 2802. Section 2802, subdivision (a) requires an employer to indemnify an employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." A necessary expense is one that is "reasonable under the circumstances." (*Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 58.) The purpose of this statute is " 'to prevent employers from passing their operating expenses on to their employees.' " (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 562.)

In his complaint, Dieves alleged that he and other drivers were required to use their personal phones to communicate with Butte Sand's dispatchers and drivers. He further alleged that Butte Sand did not reimburse him or other drivers for use of their

personal phones prior to January 1, 2020, but started reimbursing drivers $25 per month thereafter—an amount insufficient to constitute full reimbursement of the expense.

In his motion for class certification of the expense reimbursement claim, Dieves argued common issues predominated because common evidence through testimony by Butte Sand's owners and dispatchers "will demonstrate" that Butte Sand "required drivers to have personal cell phones for use at work." For claims arising before January 1, 2020, Dieves stated liability would be determined on "the common issue whether [Butte Sand] required drivers to keep cell phones," and for claims arising after that date, liability would be determined on "the common issue whether $25 per month is an adequate amount to reimburse for the use of cell phones."

The only evidence cited by Dieves in support of his motion was deposition transcripts for two Butte Sand employees.[6] One of the employees testified drivers and dispatchers used their personal phones to communicate with each other. The other employee, a supervisor, testified drivers located outside the range of the company's communication devices sometimes call him from their personal phones, "if need be."

Butte Sand opposed the class certification motion, arguing Dieves produced no common evidence that personal phone use was required and individualized inquiries would be necessary to determine the circumstances under which personal use occurred and to determine if reimbursement was sufficient following January 1, 2020.

The trial court found that Dieves failed to produce substantial evidence indicating any driver within the proposed class believed personal phone use for work was required or that the $25 per month reimbursement starting in January 2020 was insufficient for occasional use of personal phones for work. The trial court pointed to the 14 truck

---

[6] Dieves also provided a link to an unauthenticated website for the proposition that "according to an Oxford Economics survey, the average monthly stipend for cell phone use is $36.13."

drivers' declarations submitted by Butte Sand, in which most of the drivers declared that they rarely used their personal phones for work. The trial court said the declarations suggested "use of personal cell phones on the job was an individual preference" and none of the drivers indicated they were required to use their personal phones or that "they felt the timing or amount of the reimbursement they began receiving in January 2020 was inadequate." The trial court further noted there was "no evidence presented to indicate personal cell phones were necessary given the combination of" radio and other communication options available to the drivers. The trial court found that Dieves failed to produce substantial evidence showing he shares a community of interest with any other truck driver concerning the expense reimbursement claim, or that common issues predominate over individual issues.

Here, Dieves argues the trial court committed "an error of law" by finding the 14 truck drivers' declarations submitted by Butte Sand did not show that use of the cell phones was "necessary" because the declarations showed "they all used cell phones to communicate on the job" and one of the employees declared he received " 'a lot of phone calls.' " We find no merit in Dieves' argument.

There was no error of law. Dieves disagrees with the trial court's exercise of discretion, which we will not disturb on appeal. Dieves had the burden of proving a community of interest among class members as to the expense reimbursement claim. (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 326.) The trial court found Dieves failed to meet that burden. Even if the declarations and deposition testimony showed that drivers sometimes used their cell phones to communicate at work, as Dieves asserts, that does not prove a community of interest that use of personal phones was *necessary*, i.e., reasonable under the circumstances. (*Gattuso v. Harte-Hanks Shoppers, Inc.*, *supra*, 42 Cal.4th at p. 568 [whether an expense is necessary "depends on the reasonableness of the employee's choices"].) Also, nothing in the cited evidence proves a community of interest that the reimbursement following January 2020 was

15

insufficient. Because the evidence does not compel a finding in Dieves' favor as a matter of law, we affirm the trial court's denial of class certification of the expense reimbursement claim.

II

*Grant of Motion to Strike PAGA Claim*

A.    *Factual Background*

In May 2023, Butte Sand filed a motion to strike Dieves' PAGA claim[7] and his individual meal and rest break claims. Butte Sand argued the trial court's order denying Dieves' motion for class certification found there was a lack of common representative evidence regarding the meal and rest break claims, and the significant variations between individual drivers' experiences would make Dieves' PAGA claim unmanageable at trial. Butte Sand further argued it was entitled to judgment as a matter of law on the claim, because it was preempted by federal law under the Preemption Decision. In that regard, Butte Sand tried to distinguish *Garcia v. Superior Court* (2022) 80 Cal.App.5th 63 (*Garcia*), which concluded the Preemption Decision does not bar MRB claims under California law arising from conduct that occurred prior to the Preemption Decision, i.e., before December 28, 2018. It also argued the record demonstrated that drivers "frequently crisscrossed into Nevada and back," which made determining which drivers were covered by federal regulations (and on what day) "a 'highly factual inquiry' " that "would require hundreds of mini-trials and would make any trial hopelessly unmanageable." Butte Sand asserted "the variations among each individual driver's routes and interstate travel" precluded Dieves from proving his PAGA claim, "consistent with due process."

---

[7] Dieves' PAGA claim is based solely on his meal and rest break claims and does not include his expense reimbursement claim.

16

In his opposition to the motion to strike, Dieves argued the trial court lacked the authority to dismiss the PAGA claim as unmanageable, the PAGA claim is manageable because it would not threaten the court's ability to function, and striking the PAGA claim would damage the state's right to enforce its labor laws. As to Butte Sand's preemption argument, Dieves responded that because the PAGA claim "arose from conduct that occurred before December 28, 2018," the claim was not preempted, as explained in *Garcia*, *supra*, 80 Cal.App.5th 63.

In August 2023, the trial court granted Butte Sand's motion to strike the PAGA claim. The trial court explained that Dieves was seeking to recover civil penalties for MRB violations allegedly committed against 75 drivers from March 10, 2018 (the beginning of the statute of limitations period for the PAGA claim) to December 27, 2018 (the date of the Preemption Decision). The time records for the drivers during that timeframe consisted of " '11,645 unique records,' an average of 155 records per driver."

The trial court discussed Dieves' expert's review of the prior randomly selected Butte Sand time records addressed in the order denying class certification, which showed no recorded meal breaks but also did not reveal " 'whether the missed meal periods were due to work requirements or voluntary employee choice.' " The trial court noted that Dieves' expert proposed to have a survey conducted "to assess the meal period issues which cannot be evaluated by the timekeeping records," however, the trial court did not believe the "[s]tatistical analysis of timecards" would obviate the need for individual testimony by the 75 drivers regarding their daily time records. The trial court said such individual testimony would need to be allowed to protect Butte Sand's right to due process and Dieves' trial plan did not adequately account for such testimony.

The trial court further discussed the 14 truck drivers' declarations previously submitted in support of the opposition to the motion for class certification and the trial court's order in that regard, noting that 16 percent of the 75 drivers had already refuted Dieves' theory that Butte Sand prohibited or discouraged drivers from taking breaks. The

17

trial court said there was "no reason to devote the court's resources to hearing the individual testimony of seventy-five witnesses, when plaintiff's counsel could not devote time to determine exactly why each individual driver did not record off duty meal breaks on time records." The trial court struck the PAGA claims on manageability grounds based on its inherent authority, as discussed in *Wesson v. Staples* (2021) 68 Cal.App.5th 746, 766-767, disapproved by *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 594 and footnote 4 (*Estrada II*).

The trial court further found "no basis upon which to strike" the meal and rest break claims on preemption grounds, explaining *Garcia*, *supra*, 80 Cal.App.5th 63 was controlling and held "federal preemption of meal and rest period laws does not apply retroactively." Dieves appeals the order striking his PAGA claim on manageability grounds.

### B.     *The Motion to Strike Ruling Is Reversed*

Dieves argues the order striking the PAGA claim must be reversed because our Supreme Court in *Estrada II*, *supra*, 15 Cal.5th at page 594, disapproved of *Wesson v. Staples*, *supra*, 68 Cal.App.5th at pages 766-767, the case upon which the trial court relied, and held that trial courts do not have inherent authority to strike PAGA claims based on the concept of manageability. We agree and conclude the trial court's order striking the PAGA claim based on manageability is subject to reversal because our Supreme Court expressly held that trial courts do not have inherent authority to strike PAGA claims on that basis. (*Estrada II*, *supra*, 15 Cal.5th at p. 594 & fn. 4.) We next consider whether Dieves was prejudiced by the error. In that regard, we can affirm an order "on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1.)

Butte Sand raises two alternate grounds for affirmance of the order. First, Butte Sand asserts the PAGA claim must be stricken to preserve Butte Sand's "due process right to present evidence establishing its affirmative defenses." Butte Sand points to our

18

Supreme Court's statement in *Estrada II* that the court expressed "no opinion as to the hypothetical questions of whether, and under what circumstances, a defendant's right to due process might ever support striking a PAGA claim." (*Estrada II*, *supra*, 15 Cal.5th at p. 618.) Butte Sand asserts this is an appropriate case to address those questions given there is "no manner in which to effectively adjudicate" the PAGA claim while preserving Butte Sand's due process rights because the trial court concluded 75 witnesses would need to testify to protect its rights. We are not persuaded.

We find no basis in the record to conclude the PAGA claim must be stricken to preserve Butte Sand's due process rights. The trial court's findings in the order were made while looking through the lens of manageability. As our Supreme Court explained in *Estrada II*, the concept of manageability cannot be grafted onto PAGA claims because: under federal law, the concept "bears upon questions of superiority and the predominance of common issues, requirements unique to the class action context" (*Estrada II*, *supra*, 15 Cal.5th at p. 606); and, under California law, the concept is considered in connection with inquiries into "whether common issues predominate and whether a class action is a superior method of adjudication" (*id*. at p. 607). The court explained, "imposing 'a freestanding manageability requirement' as to PAGA claims "would invite courts to consider the administrative burdens" of the action "in a vacuum." ' " (*Id.* at p. 608.) This "could predictably lead to 'the dismissal of many PAGA cases' [citation] in contravention of the Legislature's intent to have the statute maximize the enforcement of labor laws [citation]." (*Ibid*.)

Here, the trial court did not find that "it would be *impossible* to manage th[e] testimony and evidence at trial" (italics added), such that it is necessary to strike the PAGA claim to preserve Butte Sand's due process rights, as Butte Sand asserts. Rather, the trial court found the PAGA claim would be unmanageable due to the testimony of 75 witnesses, whose testimony would be necessary to protect Butte Sand's due process rights. As explained in *Estrada II*, *supra*, 15 Cal.5th at page 594, the trial court had no

authority to strike the PAGA claim on that basis. Butte Sand "has not established that the [prosecution] of [Dieves'] representative PAGA claim would violate [Butte Sand's] right to due process by failing to permit such testimony" (*id.* at p. 617) and Butte Sand has not shown that the "trial court's use of case management techniques [would] so abridge[] [its] right to present a defense that its right to due process [would be] violated" (*id.* at p. 620). This is thus not the case to consider "whether, and under what circumstances, a defendant's right to due process might . . . support striking a PAGA claim." (*Id.* at p. 618.)

Second, Butte Sand argues the Preemption Decision bars the PAGA claim, and should accordingly be stricken. Before we turn to the question of preemption, we address Dieves' argument that this court cannot review the trial court's preemption ruling because it is not an appealable order. Specifically, Dieves argues his notice of appeal was limited to "the trial court's order denying class certification and the trial court's order dismissing the PAGA claims as unmanageable," and did not encompass the trial court's denial of Butte Sand's motion to strike based on preemption. Dieves asserts we do not have jurisdiction to consider Butte Sand's preemption argument because that ruling arose from "a motion for another order," which was not appealable. We disagree.

Although a respondent who has not appealed from the judgment, decision, or order usually cannot raise an error on appeal (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7), Code of Civil Procedure section 906 provides an exception. That statute provides in pertinent part: "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision . . . and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct . . . further proceedings to be had. The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining

20

whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." (Code Civ. Proc., § 906.)

"The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment." (*California State Employees' Assn. v. State Personnel Bd.*, *supra*, 178 Cal.App.3d at p. 382, fn. 7.) Without having cross-appealed, a party can properly raise an argument in its capacity as a respondent that shows the trial court reached the right result, even if on the wrong theory. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57.) That is what Butte Sand is doing here.

Butte Sand raised the preemption argument in its motion as an alternate ground to strike the PAGA claim and the individual meal and rest break claims. In his opposition to the motion, Dieves argued that because the claim "arose from conduct that occurred before December 28, 2018," the claim was not preempted, as explained in *Garcia*, *supra*, 80 Cal.App.5th 63. The trial court agreed with Dieves and denied the motion to strike the meal and rest break claims on that basis but it did not rule on the preemption argument as to the PAGA claim. Butte Sand is arguing the trial court's order striking the PAGA claim may be affirmed because the claim is preempted. Given that this was an alternate theory presented and briefed in the trial court for striking the PAGA claim, we review the preemption argument.

"Congress passed the Motor Carrier Safety Act of 1984 'to promote the safe operation of commercial motor vehicles, [and] to minimize dangers to the health of operators of commercial motor vehicles and other employees.' " (*Internat. Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration* (9th Cir. 2021) 986 F.3d 841, 846.) The Motor Carrier Safety Act of 1984 (Act) grants the Secretary of Transportation (Secretary) various powers, including the power to preempt state laws. The Act provides, "[a] State may not *enforce* a State law or regulation on commercial motor vehicle safety that the Secretary . . . decides under this section may not be

21

enforced." (49 U.S.C. § 31141(a), italics added.) The Secretary delegated this preemption authority to the administrator of the Administration. (49 C.F.R. § 1.87(f) (2025).)

The doctrine of preemption derives from the Supremacy Clause of the United States Constitution, which deems federal law the "supreme law of the land" and renders state laws that conflict with valid federal law "without effect." (U.S. Const., art. VI, cl. 2; *Maryland v. Louisiana* (1981) 451 U.S. 725, 746.) Under the doctrine, "state law is *nullified* to the extent that it actually conflicts with federal law." (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 153, italics added.) Consistent with the foregoing, the United States Supreme Court has characterized the Act's preemption provision as authorizing the Secretary to "void" and "invalidate" state laws "upon finding that their content or multiplicity threatens to clog the avenues of commerce." (*City of Columbus v. Ours Garage & Wrecker Service, Inc.* (2002) 536 U.S. 424, 441-442.)

On December 28, 2018, the Administration issued the Preemption Decision, concluding that California's MRB rules are preempted and "California may no longer enforce" the laws with respect to drivers of property-carrying commercial motor vehicles subject to the Administration's hours of service rules. (Preemption Decision, 83 Fed.Reg., *supra*, at p. 67480.) The Ninth Circuit upheld the Preemption Decision, finding the decision reflects a permissible interpretation of the Act and is not arbitrary or capricious. (*Internat. Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration*, *supra*, 986 F.3d at p. 846.)

Subsequently, the majority of the courts that have considered the scope and application of the Preemption Decision have concluded courts do not have the power to enforce the MRB rules regardless of when the conduct underlying the MRB claims

22

occurred. (*Valiente*, *supra*, 54 F.4th at p. 586, fn. 1.) *Garcia*, the only California appellate case that has addressed the question, is an outlier.[8]

In *Garcia*, the Second District Court of Appeal acknowledged that the majority of the courts having considered the question have found persuasive the interpretation that the Preemption Decision eliminates the court's power to grant relief, and the Preemption Decision thus preempts MRB claims regardless of when the conduct underlying the claims occurred. (*Garcia*, *supra*, 80 Cal.App.5th at p. 68.) The court further acknowledged that "when a state law is preempted, it is 'invalidate[d]' [citation], ' "without effect" ' [citation] and, in the words of section 31141, 'may not be enforced' [citation]." (*Ibid*.) The court disagreed, however, with the premise that " 'enforcement' includes a court's granting of relief based on the state law, and thus, when a state law is invalidated by a preemption ruling, a court may no longer grant relief based on the law, regardless of when the underlying conduct occurred." (*Id*. at pp. 68-69.)

In the *Garcia* court's view, the Preemption Decision only applies to claims arising from conduct that occurred after the decision, because: (1) section 31141 "confers upon the Secretary the authority to preempt laws, including the authority to determine and communicate what is preempted," and the Administration, "acting as the Secretary's designee, could have elected to preclude the enforcement of state laws in claims that were pending in reliance upon the agency's prior interpretation" that such laws were not

---

[8] California trial courts are presently bound to follow *Garcia*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Although the Ninth Circuit has exclusive jurisdiction under title 28 United States Code section 2342(3)(A) "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" all preemption decisions of the Secretary (and, through delegation, the Administration) under title 49 United States Code section 31141, subdivision (a) (section 31141), that jurisdictional provision has not been applied in the context of determining the scope or application of the Preemption Decision. (See *Valiente*, *supra*, 54 F.4th at p. 584 [analyzing the scope and application of the Preemption Decision pursuant to its jurisdiction under 28 U.S.C. § 1291].)

preempted—but it chose not to do so; and (2) the "may no longer enforce" language in the Preemption Decision " 'strongly suggests prospective, not retroactive, application' " given that the Administration "intentionally chose different language" than the "may not enforce" language in section 31141, subdivision (a). (*Garcia*, *supra*, 80 Cal.App.5th at p. 69.)

Shortly after *Garcia* was decided, the Ninth Circuit considered the same question regarding the scope and application of the Preemption Decision. (*Valiente*, *supra*, 54 F.4th at pp. 584-585.) The Ninth Circuit analyzed the question under the rubric of retroactivity and applied the retroactivity test set forth in *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 263-264 (*Landgraf*). That framework is intended to reconcile "any tension between two general rules: first, that 'a court is to apply the law in effect at the time it renders its decision,' and second, that '[r]etroactivity is not favored in the law' due to considerations of 'fair notice, reasonable reliance, and settled expectations.' " (*Valiente*, at p. 585.) The United States Supreme Court "traced the anti-retroactivity principle to the common law, noting that it 'has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact.' [Citation.] On the other hand, changes in law 'that merely *removed* a burden on private rights by repealing a penal provision (whether criminal or civil)' were understood to operate retroactively, 'preclud[ing] punishment for acts antedating the repeal.' " (*Ibid*.)

The *Landgraf* retroactivity test consists of two steps. First, the court determines "whether Congress has expressly prescribed the statute's proper reach." (*Landgraf*, *supra*, 511 U.S. at p. 280.) "If the relevant change in law is the result of an agency action, [a court] must find both congressional authorization for the agency to impose retroactive rules and agency intent for the rules in question to apply retroactively. [Citation.] If Congress has clearly authorized retroactive agency action, and the agency has expressed intent to act retroactively, [the court's] inquiry is at an end, and [the court] appl[ies] the change in law regardless of when the lawsuit was filed or when the

24

underlying conduct occurred." (*Valiente*, *supra*, 54 F.4th at p. 585.) Otherwise, the court proceeds to the second step to "assess whether the action would have an impermissible retroactive effect, *i.e.*, whether it would 'impair[] vested rights acquired under existing laws, or create[] a new obligation, impose[] a new duty, or attach[] a new disability, in respect to transactions or considerations already past.' " (*Ibid*.) If the action would have any such effect, the change in law applies prospectively only. (*Ibid*.)

The Ninth Circuit found that Congress and the Administration spoke "with a clear voice in prohibiting enforcement of California's MRB rules," and thus did not reach the second step of the *Landgraf* analysis. (*Valiente*, *supra*, 54 F.4th at p. 587.) The Ninth Circuit concluded that, "[b]ecause Congress intended for the [Administration] to have the power to halt enforcement of state laws, and because the [Administration] intended for this particular preemption determination to apply to pending lawsuits, the [Administration's] decision prohibits present enforcement of California's MRB rules regardless of when the underlying conduct occurred." (*Id.* at p. 585.)

The Ninth Circuit focused on the language "may not enforce" in section 31141, subdivision (a), concluding the language clearly provides that a court may not give effect to the preempted MRB rules. (*Valiente*, *supra*, 54 F.4th at pp. 585-586.) The court said its interpretation of the Preemption Decision accorded "with principles of federalism and the logic animating the doctrine of preemption" because it had previously described the preemption doctrine as "establishing that 'state and local laws are not enforceable if they impinge upon an exclusive federal domain.' " (*Id.* at p. 586.) In that regard, "[a]n entity attempting to enforce a preempted law 'has attempted to exercise power which it does not possess,' " which is why, when a court declares a state law preempted, the resulting judgment renders the law unenforceable even in the case before that court. (*Id.* at pp. 586-587.) "The preemption context is thus different from other circumstances under which statutes and agency rules are created, amended, or eliminated." (*Id.* at p. 587.)

25

The Ninth Circuit rejected the reasons that the *Garcia* court set forth as the basis for reaching a contrary conclusion. First, the Ninth Circuit said the words "may no longer enforce" in the Preemption Decision, when taken in context, "simply mean what they say: that the preemption decision is to have immediate effect upon a state's or court's power with respect to the MRB rules." (*Valiente*, *supra*, 54 F.4th at p. 586.) It explained the "may no longer enforce" language, like the "may not enforce" language in section 31141, subdivision (a), "thus prohibits enforcement of the MRB rules no matter when a challenge to those rules arises." (*Valiente*, at p. 586.)

Second, the Ninth Circuit found no need for either the Act or the Preemption Decision to "explicitly reference retroactivity." (*Valiente*, *supra*, 54 F.4th at p. 586.) The court explained: "A court's decision to enforce a statute or agency rule is inherently backward-looking. Making such a decision requires the court to compare conduct that has already occurred to standards set forth in the relevant legal authority. If the court finds a discrepancy between the past conduct and the relevant legal standard, it exercises its power in law or equity to enforce the standard. Here, the [Act] and the [P]reemption [D]ecision deprive the state, and by extension courts enforcing state law, of this power by stating that they 'may not' or 'may no longer' enforce the MRB rules in the context of the trucking industry. As the Court made clear in *Landgraf*, new rules that 'speak to the power of the court rather than to the rights or obligations of the parties,' such as jurisdictional rules, apply even to pending cases without provoking retroactivity concerns." (*Ibid.*; *Landgraf*, *supra*, 511 U.S. at p. 274 [the United States Supreme Court has "regularly applied intervening statutes conferring or ousting jurisdiction" to cases before it "whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed"].)

Whether the interpretation of the Preemption Decision is appropriately considered under the rubric of retroactivity or not, we agree with the Ninth Circuit's analysis and conclusion. The word "enforce" is generally defined in dictionaries as " 'give force or

effect to,' " " 'to put in force,' " and " 'cause to take effect.' " (*Thurdin v. SEI Boston, LLC* (2008) 452 Mass. 436, 453.) And the *preemptive effect* under the Act and the Preemption Decision is focused on an action taken by a specific actor—i.e., the state, which includes the courts. (Cf., e.g., 49 U.S.C. § 20106(b)(2) [preemption provision "shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002"].) When the state enforces a law, it takes the action in the present. The language of the Act and the Preemption Decision are thus clear—California courts do not currently have the power to enforce (i.e., give effect to) any MRB claim to which the Preemption Decision applies (i.e., claims by drivers of property-carrying commercial motor vehicles subject to the Administration's hours of service rules). We see no material difference between the "may not enforce" language in section 31141, subdivision (a), and the "may no longer enforce" language in the Preemption Decision. The pertinent word is "enforce," and both the Act and the Preemption Decision strips California courts from taking the action to enforce the MRB rules as of December 28, 2018.

Although we conclude the PAGA claim *could be* preempted because the Preemption Decision applies to MRB claims irrespective of when the underlying conduct occurred, we cannot conclude that Dieves' PAGA claim *is* preempted. Preemption only applies to claims by drivers of property-carrying commercial motor vehicles subject to the Administration's hours of service rules. (Preemption Decision, 83 Fed.Reg., *supra*, at p. 67480.) Such factual determinations are left to the trial court in the first instance. (See *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 605 [absent exceptional circumstances, factual determinations should be left to the trial court].) We will accordingly remand for the trial court to make that determination. (Code Civ. Proc., § 906.)

For the foregoing reasons, we reverse the order striking Dieves' PAGA claim and remand for the trial court to consider whether the PAGA claim is preempted.

## DISPOSITION

The order denying class certification of Dieves' rest break and expense reimbursement claims is affirmed.  The order denying class certification of Dieves' meal break claim and derivative unfair competition claim is reversed and the matter remanded for reconsideration consistent with this opinion.  The order granting Butte Sand's motion to strike Dieves' PAGA claim is reversed and the matter remanded for consideration of Butte Sand's preemption argument.  The parties shall each bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)

                                               /s/
                                        BOULWARE EURIE, J.

We concur:


      /s/
EARL, P. J.


      /s/
MESIWALA, J.